```
              IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON

MIKE BRAINERD,                    )
                                  )    Civil No. 04-1735-JE
          Petitioner,             )
                                  )
     v.                           )
                                  )
GUY HALL,                         )
                                  )    FINDINGS AND RECOMMENDATION
          Respondent.             )

     C. Renee Manes
     Assistant Federal Public Defender
     101 SW Main Street, Suite 1700
     Portland, Oregon 97204

          Attorney for Petitioner

     Hardy Myers
     Attorney General
     Douglas Y.S. Park
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

          Attorneys for Respondent
```

1 - FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his underlying state convictions for Robbery and Assault. For the reasons that follow, the First Amended Petition for Writ of Habeas Corpus (#14) should be denied, and Judgment should be entered dismissing this action with prejudice.

## BACKGROUND

On April 16, 1996, the Washington County Grand Jury returned an indictment charging petitioner with three counts of Robbery in the First Degree with a Firearm and one count of Assault in the First Degree with a Firearm. Respondent's Exhibit 102. As part of a plea agreement, petitioner pled guilty to one count each of Robbery in the First Degree and Assault in the First Degree, and the court imposed consecutive 90-month sentences on each count. Respondent's Exhibit 101. In addition, at a supplemental sentencing hearing, the court imposed five-year minimum sentences under the firearm statute. Respondent's Exhibit 106, p. 8.

Petitioner directly appealed his sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. State v. Brainerd, CA A96032 (1997), rev. denied SC S44551 (1997); Respondent's Exhibits 107-111.

2 - FINDINGS AND RECOMMENDATION

Petitioner next filed for post-conviction relief ("PCR") in state court. The PCR trial court vacated the gun minimum sentences, but denied relief on all other grounds. Respondent's Exhibits 119-121. The Oregon Court of Appeals affirmed the PCR trial court without written opinion, and the Oregon Supreme Court denied review. <u>Brainerd v. Palmateer</u>, 191 Or. App. 653, 86 P.3d 118 (2004), <u>rev. denied</u> 336 Or. 657, 92 P.3d 122 (2004).

On November 26, 2004, petitioner filed this action. Petitioner's grounds for relief as set forth in his First Amended Petition for Writ of Habeas Corpus can be characterized as follows:

1. Trial counsel was ineffective when he:

    (a) Failed to investigate the facts and circumstances surrounding petitioner's case. Specifically, counsel did nothing to investigate the case to support the claim that the shooting was accidental and counsel spent little time discussing petitioner's defense and/or possible strategy at trial. Instead, counsel's efforts were focused on scaring petitioner into accepting a plea bargain. Trial counsel's conduct was prejudicial because it deprived petitioner of any defense if the case proceeded to trial;

    (b) Misled petitioner into waiving his right to trial by erroneously advising him that if convicted he faced a possible 360 month sentence, but that by pleading guilty, he would receive 90 months. Hence, petitioner's guilty plea was not knowingly and voluntarily made. Petitioner contends that he could not have received a 360-month sentence because Counts 1, 2, and 3 (all Robbery in the First Degree with a Firearm counts) charged him with the same criminal act and simply constituted different Robbery 1 theories and would not be eligible for consecutive sentences. In addition, petitioner asserts that he pled guilty with the

        understanding that he would receive a 90-month sentence. Finally, petitioner contends that counsel's performance was constitutionally deficient in that he failed to seek a statutory plea;

2. The trial court violated petitioner's rights under the Sixth and Fourteenth Amendments when it enhanced his sentence based on allegations that were not charged, and were neither proven to the jury at trial nor admitted to by petitioner;

3. The trial court violated petitioner's rights to due process, fundamental fairness, and equal protection when it imposed a sentence based on a standard less than beyond a reasonable doubt;

4. Trial counsel was ineffective when he failed to raise the issues contained in Grounds Two and Three protecting petitioner's Fifth, Sixth and Fourteenth Amendment rights; and

5. Appellate counsel rendered constitutionally ineffective assistance in violation of petitioner's Fifth, Sixth, and Fourteenth Amendment rights when he failed to raise the issues contained in Grounds Two and Three on appeal.

Notably, petitioner amended his petition to add Grounds Two through Five. These Grounds contain claims based on the Supreme Court's holding in <u>Blakely v. Washington</u>, 124 S.Ct. 2535 (2004). In an earlier Findings and Recommendation (#22), adopted by Order (#34), this court held that petitioner's <u>Blakely</u> claims were "plainly meritless" and recommended that this action proceed only on the claims in the original *pro se* Petition (#2). Accordingly, the court will confine its discussion to Grounds 1(a) and 1(b) above.

Respondent asks the court to deny relief on the Amended Petition because: (1) Ground 1(a) was not fairly presented to the

4 - FINDINGS AND RECOMMENDATION

state courts and is now procedurally defaulted; and (2) the state court decisions denying relief on petitioner's claims were neither "contrary to" nor "unreasonable applications of," applicable Supreme Court precedent.

## DISCUSSION

### I.  Exhaustion and Procedural Default.

Respondent contends that petitioner failed to fairly present his claim that trial counsel was ineffective for failing to adequately investigate the facts and circumstances surrounding petitioner's contention that the shooting was accidental (Ground 1(a)) to the Oregon state courts and that it is now procedurally defaulted.

#### A.   Standards.

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982).  "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed

to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

**B.   Analysis**.

As noted above, petitioner's Ground 1(a) claim relates to trial counsel's alleged failure to adequately investigate the facts and circumstances surrounding petitioner's contention that the shooting was accidental. Petitioner alleges that had counsel conducted a proper investigation, he would have discovered evidence negating the intent element necessary to convict him of Assault in the First Degree. Petitioner's Brief in Support (#38), pp. 6-7.

Respondent contends that this failure to investigate claim is distinct from the one petitioner presented to the Oregon appellate courts wherein he asserted that trial counsel was ineffective for failing to *advise* petitioner that intent is an element of Assault in the First Degree. Response to Habeas Corpus Petition (#32), p. 6. In response, petitioner argues that he has presented a consistent claim alleging that counsel provided ineffective assistance in defending him on the Assault in the First Degree charge given that the shooting was accidental. Petitioner's Brief in Support (#38), p. 8.

Because, as discussed below, petitioner's Ground 1(a) claim is without merit, the court need not engage in a lengthy discussion parsing the boundaries between trial counsel's roles as investigator and advisor to determine whether the claim was fairly presented to Oregon's state courts. See 28 U.S.C. § 2248(b)(2)("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

II. **The Merits**.

   A. **Standard of Review**.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

7 - FINDINGS AND RECOMMENDATION

the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

///
///
///

8 - FINDINGS AND RECOMMENDATION

**B.   Ineffective Assistance of Trial Counsel**.

    1.   <u>Ground 1(a):  Failure to investigate the facts and circumstances surrounding petitioner's contention that the shooting was accidental</u>.

In Ground 1(a), petitioner alleges that trial counsel was constitutionally ineffective when he failed to investigate the facts and circumstances supporting petitioner's contention that the shooting was accidental.  The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.  First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686-687 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."  <u>Id</u> at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.  The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u> at 694. In proving prejudice, a petitioner who has pled guilty to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a

9 - FINDINGS AND RECOMMENDATION

plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

As a preliminary matter, petitioner contends that the PCR trial court incorrectly applied a preponderance of the evidence standard to his ineffective assistance claims. Petitioner argues that due to this error, 28 U.S.C. § 2254(d)(1) does not govern this court's analysis and he seeks *de novo* review. For the reasons set forth below, I disagree with petitioner's contention that the PCR trial court used the wrong standard of proof.

To prevail in his state post-conviction proceeding, petitioner had the burden of proving the facts underlying his claims of ineffective assistance of counsel by a preponderance of the evidence. Or.Rev.Stat. § 138.620(2). Courts have repeatedly held that litigants seeking to prevail in a collateral proceeding must prove the facts of their case by a preponderance of the evidence. Holland v. Jackson, 542 U.S. 649, 654 (2004); Alcala v. Woodford, 334 F.3d 862, 869 (9th Cir. 2003).

The application of the preponderance of the evidence standard to the underlying facts, in accordance with ORS 138.620(2), does not equate with the PCR court applying the preponderance of the evidence standard in its application of Strickland.

Having rejected petitioner's contention that the PCR court applied the wrong standard in its decision, this court is bound by § 2254(d)(1). Accordingly, I will recommend that relief be granted

only upon a showing that the PCR trial court's decision was an unreasonable application of <u>Strickland</u>.

The PCR trial court made the following pertinent conclusion of law relating to petitioner's ineffective assistance of trial counsel claims:

> CONCLUSIONS OF LAW
>
> 1.  In the underlying criminal proceeding resulting in petitioner's conviction, petitioner was not denied the right of assistance of counsel, as guaranteed by [ ] the United States Constitution . . . .

Respondent's Exhibit 120, p. 3.

The evidence before the PCR court in its evaluation of counsel's representation included petitioner's post-conviction deposition, the parties' trial memoranda, the affidavit of trial counsel, and transcripts of petitioner's change of plea hearing and sentencing hearings. Respondent's Exhibits 113, 115-119.

In his deposition, petitioner stated that counsel told him that he had "studied" the police reports, and petitioner conceded that he had been given a chance to tell his story. Respondent's Exhibit 117, p. 5. In addition, it is clear from counsel's remarks at the sentencing hearing that he understood petitioner's contention that the shooting was accidental:

> [Petitioner] does not deny that he pointed a gun at Mr. Wilms [the victim]. His intent was to get Mr. Wilms to sit on the floor so that he wouldn't be up thrashing around and perhaps come at him. [Petitioner] told Mr. Petersdorff, the other codefendant, three times to have Mr. Wilms sit down. In other words, push him down to the

11 - FINDINGS AND RECOMMENDATION

>floor.  At no time did [petitioner] ever threaten to cap
>him -- or anything like that.  There were no threats of
>any type made.  It was simply to Mr. Petersdorff, the
>codefendant, "Sit him down."  In other words, put him --
>get him on the floor, push him down.
>
>After Mr. Wilms was on the floor, he reached up and
>grabbed the barrel of the shotgun.  [Petitioner] was
>holding the shotgun with one hand and his finger was on
>the trigger.  When Mr. Wilms pulled the shotgun toward
>him to try to get it away from [petitioner],
>[petitioner's] finger didn't move with the gun.  It
>stayed in place, causing the trigger to come back and
>fire off.  That's how this happened.  [Petitioner] did
>not point the gun at Mr. Wilms and threaten to shoot him
>or just, as the PSI writer indicates in his interview
>with Mr. Wilms, pull the gun around, bead down on him,
>and shoot him.  That was not what happened.  It was an
>accident.  Granted, [petitioner] was asking for trouble
>when he walked into the house with a loaded shotgun in
>the first place.  Nevertheless, the trigger, the gun
>going off was an accident.

Respondent's Exhibit 105, pp. 9-10.

In addition, petitioner has failed to specify for the court any additional action counsel should have taken or evidence he should have gathered that would have supported an accidental shooting defense.  In his supporting memorandum, petitioner suggests that counsel failed to gather the statement of Kurt Cooper, a witness who stated that the gun only went off after the victim "knocked the gun down."  Petitioner's Brief in Support (#38), p. 13 (quoting Petitioner's Exhibit 1, Report of Washington County Sheriff at internal p. 27).  This assertion is belied, however, by the fact that at the sentencing hearing counsel specifically argued that "in the police reports, there are

12 - FINDINGS AND RECOMMENDATION

corroborating statements from other people saying that [the victim] did in fact grab the shotgun * * * during the course of the commission of this particular crime." Respondent's Exhibit 105, p. 15.

Significantly too, petitioner had a number of obstacles to overcome in lodging a successful accidental shooting defense. For example, as the prosecutor indicated during the sentencing hearing, petitioner had committed another robbery earlier in the day wherein a different gun he was holding went off. Respondent's Exhibit 105, pp. 12-13. Petitioner claimed that that gun fired accidentally when the victim in that robbery attempted to grab it from him. Id. Furthermore, petitioner had to contend with the possibility that potential jurors might share the view of the sentencing judge. Skeptical of petitioner's accidental shooting defense, she bluntly stated that "[g]oing to a house with guns to commit robberies when somebody is shot is no accident." Id at 18-19.

Given these challenges, the court finds counsel's recommendation that petitioner accept a plea bargain, despite petitioner's claim that he had an accidental shooting defense to the charge of Assault in the First Degree, was based on counsel's realistic assessment of the likelihood that a jury would accept such a defense, and not on any failure on counsel's part to adequately investigate petitioner's case.

13 - FINDINGS AND RECOMMENDATION

It is apparent that counsel clearly understood petitioner's accidental shooting defense. Moreover, petitioner has failed to specify what additional action counsel should have taken or evidence he should have gathered to give merit to such a defense. Accordingly, with regard to petitioner's Ground 1(a) claim, the PCR trial court's conclusion that petitioner was not denied the effective assistance of counsel as guaranteed by the Constitution was neither contrary to, nor and unreasonable application of, clearly established federal law.

    2.   <u>Ground 1(b): Misleading petitioner into believing that he could receive 360 months at trial and that he would receive only 90 months if he pled guilty, and failing to take a statutory plea</u>.

In Ground 1(b), petitioner alleges that trial counsel erroneously advised him that he was facing 360 months if he went to trial and that he would be sentenced to only 90 months if he pled guilty. In addition, petitioner alleges that counsel was ineffective in failing to seek and secure a statutory plea ensuring that petitioner would receive just 90 months under the plea bargain. The PCR trial court made the following pertinent findings of fact relating to these claims:

FINDINGS OF FACT

    1.   In the underlying criminal proceedings, petitioner was convicted, by guilty plea, of Robbery in the First Degree with a Firearm and Assault in the First Degree with a Firearm.

14 - FINDINGS AND RECOMMENDATION

>    2. Before pleading guilty, counsel told petitioner, and petitioner understood, that the court could impose consecutive 90-month Ballot Measure 11 sentences for those convictions.
>
>    3. Counsel was not able to ask the court, pursuant to ORS 135.432, to commit itself to giving petitioner concurrent sentences because no such plea agreement was reached between petitioner and the prosecutor.

Respondent's Exhibit 120, p. 2.

The issue as to whether counsel misled petitioner into pleading guilty based on his representations that he would receive only 90 months if he pled guilty is a question of credibility. Trial counsel attested and the PCR court found, that counsel advised petitioner that while counsel would argue for concurrent sentences, the sentencing court could impose consecutive sentences. Respondent's Exhibit 118, pp. 1-2; Id. Petitioner conceded that he signed the Petition to Enter Plea of Guilty which stated that "[his] presumptive sentence is 90 months **on each count.**" Respondent's Exhibit 103, p.1 (emphasis added). Nevertheless, he contends that he understood from counsel that he would only get 90 months. Respondent's Exhibit 117, pp. 6-8. However, beyond his own recollection, petitioner offers nothing to support his contention.

Accordingly, I find that petitioner's argument in this regard does not rise to the level of rebutting the PCR trial court's credibility findings by clear and convincing evidence, therefore

15 - FINDINGS AND RECOMMENDATION

petitioner's claim fails under the deficient performance prong of Strickland.

Petitioner further asserts that counsel erroneously advised him that he was facing a 360-month sentence if he went to trial. Petitioner's Brief in Support (#38), p. 13. Petitioner contends that had he known that the maximum he could have received at trial was 180 months (the sentence he ultimately received under the plea agreement), he would not have accepted the plea bargain, but would have taken his chances at trial. Id at 14.

In response, respondent disagrees with petitioner's assertion that he "'pled guilty to the maximum sentence he faced under Oregon law had he gone to trial.'" Reply to Petitioner's Brief in Support (#52), p. 5 (quoting Petitioner's Brief at p. 13). Respondent argues that pursuant to Huddleston v. Sawyer, 324 Or. 597, 932 P.2d 1145, cert. denied, 422 U.S. 994 (1997), the trial court could have imposed departure sentences beyond the 90-month minimum Measure 11 sentences. Reply to Petitioner's Brief in Support (#52), p. 5.

The Oregon Supreme Court stated in Huddleston that "the enactment or operation of a statutorily mandated term of imprisonment does not erase the applicability of the felony sentencing guidelines" and "[t]hat although the statutorily mandated term of imprisonment likely will exceed 'the presumptive sentence' prescribed by the felony sentencing guidelines in most cases, . . . the sentencing court may use the criteria for

16 - FINDINGS AND RECOMMENDATION

departure sentences in the guidelines to impose a sentence greater than the statutorily mandated minimum, even when the offense is listed in ORS 137.700(2) [*i.e.*, Ballot Measure 11]."  Huddleston, 324 Or. at 603-04, 932 P.2d at 1150.[1]

During petitioner's plea hearing, the trial court advised him that the "presumptive sentences" under the Oregon State Sentencing Guidelines ("OSSG") for Robbery in the First Degree and Assault in the First Degree were 46-50 months and 81-90 months, but that because the crimes were Measure 11 crimes, he was "going to do 90 on each."  Respondent's Exhibit 104, pp. 3-4.  Significantly, the trial court then informed petitioner that the "[m]aximum penalty [was] 20 years on each and a $300,000 fine on each, or a total of 40 years and $600,000."  Id at 4.

Based on the foregoing, had petitioner's case proceeded to trial, even assuming that the court could not have imposed consecutive sentences on the three Robbery counts as petitioner argues, the sentencing court could have imposed sentences greater than the 90-month mandatory minimums set forth under Measure 11 for Robbery in the First Degree and Assault in the First Degree. Indeed, upon adequate demonstration of substantial and compelling reasons for deviation from the minimum Measure 11 sentences, the

---

[1] Notwithstanding petitioner's contention that Huddleston is inapplicable to his case, it clearly addresses the question as to whether a sentencing court may upwardly depart from a Measure 11 minimum sentence.  Id.

17 - FINDINGS AND RECOMMENDATION

trial court conceivably could have imposed a sentence totaling 40 years.  See Huddleston, 324 Or. at 602, 932 P.2d at 1149 (citing ORS 137.671).

Accordingly, the court finds that petitioner has failed to show that trial counsel's representation that petitioner could receive 360 months at trial was false, or that petitioner received no benefit from his plea bargain.  As such, the PCR trial court's conclusion that petitioner was not denied the effective assistance of counsel as guaranteed by the Constitution was neither contrary to, nor and unreasonable application of, clearly established federal law.

Finally, with regard to petitioner's allegation that counsel was ineffective for failing to seek and secure a statutory plea, respondent contends that the relevant statute provides that if the parties reach a tentative agreement, they may present such agreement to the trial judge who in turn may advise the parties whether he or she would concur in the proposed disposition.  Response to Habeas Corpus Petition (#32), p. 13; ORS 135.432(2).

The PCR trial court found that no agreement had been reached on the issue of concurrent sentences between the prosecutor and petitioner, and that counsel had no basis on which to request a statutory plea.  Respondent's Exhibit 120, p. 2.  The court also notes that beyond restating the allegation set forth in the *pro se* Petition, petitioner has not briefed the merits of this issue.  For

18 - FINDINGS AND RECOMMENDATION

these reasons, the court finds that petitioner has failed to rebut the PCR trial court's finding of fact by clear and convincing evidence and petitioner's claim fails under the deficient performance prong of Strickland.

## RECOMMENDATION

For the reasons identified above, the First Amended Petition for Writ of Habeas Corpus (#14) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

## SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of

///
///
///
///
///

19 - FINDINGS AND RECOMMENDATION

a party's right to appellate review of the findings of fact in order of judgment entered pursuant to the Magistrate Judge's recommendation.

    DATED this  11th  day of April, 2007.

                                       /s/ John Jelderks
                                John Jelderks
                                United States Magistrate Judge